# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

**UNITED STATES OF AMERICA,**
*Plaintiff*

§
§
§
§

**v.**

§       **P:24-CR-00320-DC**

§

**(1) LOUIE ELLIOT RICO,**
*Defendant*

§
§
§

## ORDER ON MOTION TO SUPPRESS

BEFORE THE COURT is Defendant Louie Elliot Rico's Motion to Suppress Evidence.[1] Defendant requests the suppression of firearm evidence obtained by officers in connection with a purportedly illegal search of a hotel room. Defendant is a convicted felon and is therefore unable to lawfully possess a firearm under 18 U.S.C. § 922(g)(1).

The Court held an evidentiary hearing on the Motion on February 28, 2025. At the hearing, testimony and evidence were presented that assured this Court that the warrantless entry into the hotel room by Deputies Baker and Davila was lawful pursuant to the emergency aid exception to the general warrant requirement. The deputies were unaware that Defendant was a felon prior to entry and were responding to a request for help in connection with a potential hostage situation where Defendant had allegedly threatened to kill the victim at gun point. The actions by Deputies Davila and Baker were not for gathering evidence but for assisting the victim.

---

[1] Doc. 21.

In other words, the entry was lawful. And because the entry was lawful, no constitutional violation occurred, and no evidence need be suppressed. The Motion is **DENIED**.

## STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[2] "[W]hen it comes to the Fourth Amendment, the home is first among equals."[3] The Supreme Court has determined warrantless searches and seizures are per se unreasonable unless an exception to the warrant requirement applies.[4]

Evidence that law enforcement officers obtain in violation of the Fourth Amendment is subject to suppression under the exclusionary rule.[5] "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree."[6]

Ordinarily, the defendant bears the burden of proving by a preponderance of the evidence that the evidence at issue was obtained in violation of the Fourth Amendment.[7] But when law enforcement officers conduct a search or seizure without a warrant, the

---

[2] U.S. CONST. amend IV.
[3] *Florida v. Jardines*, 569 U.S. 1, 6 (2013).
[4] *See Katz v. United States*, 389 U.S. 347, 357 (1967).
[5] *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014).
[6] *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (internal quotation marks omitted) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).
[7] *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

government bears the burden of proving by a preponderance of the evidence that the search or seizure was constitutional.[8]

## BACKGROUND

Around 10 p.m. on September 19, 2023, the Culberson County Sheriff's Department received a phone call that Defendant had or was threatening to kill Karla Guerrero at gun point. The caller provided the location of the threat as a hotel room, room 136, at the Desert Inn Hotel in Van Horn, Texas.

Deputies Davila and Baker, with the Culberson County Sheriff's Department, responded, arriving at the hotel around 10:40 p.m., the same night. The deputies approached room 136 but realized the room looked empty. They then approached room 135 and knocked on the door. About 20 seconds later, Defendant opened the door. Guerrero was seen in the background lying on the bed under blankets.

Deputy Baker inquired about the situation, explaining the concerns raised by the phone call. Defendant stated that he and Guerrero were simply talking and admitted he had said things he shouldn't, though he claimed this occurred earlier. Defendant was asked to step outside for further questioning, where he was handcuffed for detention purposes and escorted to the parking lot.

As Defendant exited, he instructed Guerrero to tell the officers they were "good." Guerrero then presumably tried to prevent officers from entering the room by telling them she was naked. Deputy Baker stepped into the room anyway, absent consent, stating, "Ok, well, I'm not going to pull the covers back. What's going on, Karla?"

---

[8] *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

3

Deputy Baker testified that before actually stepping into the room, while in the doorway threshold, he observed something that looked like a firearm on the bed next to Guerrero. Without confirming the identity of the object or asking for consent to enter, Deputy Baker entered the hotel room and immediately confirmed his suspicions that the item was a firearm.

Inside the room, Guerrero denied ownership of the weapon and claimed Defendant had not made any threats against her. Outside, Defendant told Deputy Davila that the firearm on the bed and a second firearm in a bag belonged to his cousin, but he admitted to bringing both firearms into the hotel room.

Defendant contends his Fourth Amendment rights were violated when Deputy Baker stepped from the threshold into the hotel room because Deputy Baker lacked consent, and no exigent circumstances or exceptions to the warrant requirement applied. Defendant further asserts that the plain view doctrine does not apply as Deputy Baker was admittedly uncertain the object in question was a weapon before the allegedly unlawful entry. Finally, Defendant argues the emergency aid exception cannot apply because the deputies had already secured Defendant, so he was not an immediate threat, and Guerrero had assured them everything was fine.

In response, the Government contends the deputies had a reasonable concern for Guerrero's safety based on the call reporting a threat to her life. The Government also argues the deputies had to act swiftly to investigate, as any delay could jeopardize her safety. They did not take seriously Guerrero's attempts to deter them from entering because Defendant was reportedly armed and dangerous and had told Guerrero to "tell them we're

good," which the deputies interpreted as a threat. The Government also contends, in its Motion at least, that plain view of the weapon before entering the hotel room gave them additional justification to enter.[9]

As noted above, Defendant claims officers lacked an exception to the warrant requirement or consent to enter the room and therefore that, combined with the "fruit of the poisonous tree" doctrine, the firearms discovered from the illegal search should be suppressed.

## DISCUSSION

The Court's ruling hinges on two separate but related factual issues. First, the Court must determine whether these facts conform to the emergency aid exception such that the warrantless, consentless entry into the hotel room was lawful. Second, the Court must determine whether the gun on the bed was in plain view such that either the entry under the emergency aid exception was bolstered or, in the alternative, that the plain view doctrine alone provided cause for entry. The Court does not find that the gun was in plain view prior to entry, but it does find that deputies acted appropriately to render immediate aid, thus justifying their entry into Defendant's hotel room.

First, it is undisputed that Defendant had a legitimate expectation of privacy in his hotel room, as courts in the Fifth Circuit have long extended the traditional Fourth Amendment protections against unreasonable searches of homes to hotel rooms. [10]

---

[9] This was disproved at the hearing, as Deputy Baker admitted to confirming the identity of the weapon only after he stepped foot in the hotel room.
[10] *Stoner v. California*, 376 U.S. 483, 490 (1964).

Therefore, because Defendant had a reasonable expectation of privacy in that room, the general warrant requirement applies.

Next, it is also undisputed that Deputies Davila and Baker entered Defendant's hotel room without a warrant or consent. A warrantless search is presumptively unlawful unless it falls within one of the "jealously and carefully drawn" exceptions to the warrant requirement.[11] Several such exceptions have been recognized by courts, including when circumstances exist that would lead a reasonable officer to believe entry is necessary to "preserve life or avoid serious injury."[12] That exception is the emergency aid doctrine.

Police, as the "jack-of-all emergencies,"[13] must attend to a wide variety of services that are, in the words of the Supreme Court, "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[14] In these circumstances, officers are not primarily focused on gathering evidence or apprehending a suspect. Community caretaking services include welfare checks, responding to 911 calls, assisting the sick or injured, or preventing sickness or injury.

The emergency aid exception is most often used to refer to community caretaking services that fall into the latter category—when members of the community are seriously injured or threatened with injury.[15] Accordingly, police may enter a home without a warrant

---

[11] *Jones v. United States*, 357 U.S. 493, 499 (1958).
[12] *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).
[13] W. LaFave, 3 SEARCH AND SEIZURE § 5.4(c) (6th ed. 2024).
[14] *Cady v. Dombrowski*, 413 US 433, 441 (1973).
[15] *Bringham City*, 547 U.S. at 403.

to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.[16]

Plenty of evidence was developed at the hearing to demonstrate that Deputy Baker was acting in that limited community caretaking capacity when he stepped out of the entryway and into the hotel room. In this case, Deputy Baker's actions were "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[17] He was looking for neither evidence nor suspect. The purpose of his warrantless entry into the hotel room was "out of concern for the safety of the general public"[18]— to ensure that Guerrero was okay. This was confirmed by the deputy's first words upon entry: "What's going on Karla?"

The specific facts and circumstances known to the officers at the time of entry that justified the search are (1) the call to the sheriff's office that Defendant was threatening or had threatened to kill Guerrero at gun point, (2) Defendant told Guerrero, in what the deputies viewed as a threat, "tell them we're good," (3) inference from the deputies' background and experience that Guerrero might be scared to talk to avoid angering Rico, and (4) an item that appeared to be a gun that was visible to Deputy Baker prior to his entry.[19] These factors favor a finding of lawful entry under the emergency aid doctrine.[20]

---

[16] *Id.* (internal citations omitted).

[17] *Cady*, 413 U.S. at 441.

[18] *Id.* at 447.

[19] The Court recognizes that Deputy Baker was not completely confident the item was a firearm until he stepped fully into the hotel room.

[20] There is also no evidence that at the time of the search police were aware Defendant was a felon, and it is therefore unlikely the deputies were searching for evidence to support a charge that he was a felon in possession.

Although the deputies were able to safely remove Defendant from the hotel room, and no evidence suggests he posed a physical threat to anyone at the time, at least once removed from the room, officers had other reasons to act quickly and sweep for other weapons, especially once Deputy Baker identified the firearm on the bed where Defendant was previously.

It is therefore reasonable to assume that an objectively reasonable officer would have believed there was an immediate need for aid justifying the entry and a reasonable need to further sweep the room for weapons.[21]

The Motion is therefore **DENIED**.

It is so **ORDERED**.

SIGNED this 7th day of March, 2025.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[21] *Scott v. United States*, 436 U.S. 128, 138 (1978).